IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-CV-00391-WYD-PAC

RELEXUS, INC., a Delaware corporation;
ANATOLY V. PESHKOV; and
OKSANA V. PESHKOVA,

    Plaintiffs,

v.

IGOR BOYCHENKO;
MICHAEL ERMAKOV;
VICTOR L. BORISOV;
IVAN Y. POPOV;
IOSIF BASIS;
RELEX, INC., a de facto corporation believed to have been organized under the laws of the Russian Federation;
SOLOVATSOFT, INC., a California corporation; and
AMERICAN COMPUTER SYSTEMS, INC., a California corporation,

    Defendants.
_____

**ORDER**
_____

THIS MATTER is before the Court on Defendants Iosif Basis, Solovatsoft, Inc. and American Computer Systems, Inc.'s Motion to Compel Arbitration and Stay Proceedings (the "California Defendants' Motion to Compel"), filed May 3, 2005, and Defendants Relex, Inc., Igor Boychenko, Michael Ermakov, Victor L. Borisov, and Ivan Popov's Joinder in Certain Defendants' Motion to Compel Arbitration and Stay Proceedings (the "Russian Defendants' Motion to Compel"), filed May 20, 2005.  For purposes of this Order, I address the legal arguments raised in the California Defendants' Motion to Compel as though they were submitted to this Court in one

consolidated motion by all of the Defendants to this action (collectively I refer to the two motions as "Defendants' Motion to Compel"). A hearing on Defendants' Motion to Compel was held Tuesday, August 10, 2005. At the conclusion of the hearing I indicated that I would take Defendants' Motion to Compel under advisement. After careful consideration of the parties' submissions, the relevant law, and the statements made by counsel for the parties during the hearing, I conclude that Defendants' Motion to Compel should be granted in part and denied in part in accordance with this Order.

**I.       Background**

In the 1990s, Plainiff Peshkov and Defendants Boychenko and Ermakov were the principals in a Russian business known as Relix, Inc. ("Relix Russia"). Relix Russia developed a database management system known as LINTER Software. Plaintiffs Peshkov and Peshkova, who are husband and wife, relocated to the United States in 1997. In June 2000, Peshkov, Boychenko, and Ermakov agreed to form Plaintiff RelexUS, Inc. ("RelexUS"), a Delaware corporation. Peshkov, Boychenko, and Ermakov were all officers, directors and shareholders of RelexUS and each allegedly signed agreements with RelexUS which contained "non-competition" provisions and prohibitions against disclosing trade secrets.

On June 12, 2000, Relex Russia and RelexUS entered into an Assignment Agreement, whereby Relex Russia assigned to RelexUS the exclusive right to sell or license LINTER Software to third parties in all countries except the former Soviet Union and the Baltic States. The term of the Assignment Agreement was twenty (20) years. Plaintiffs assert that in 2004 Defendants Boychenko and Ermakov breached the

Assignment Agreement by collaborating with Mr. Iosif Basis ("Basis") and American Computer Systems, Inc. ("ACS") to form a business in California known as "SolovatSoft".  Plaintiffs further claim that the individual defendants provided LINTER to SolovatSoft and that SolovatSoft began marketing LINTER to existing customers and potential customers of RelexUS.  Defendants refute these allegations, stating Basis, Solovatsoft and ACS have never been involved with the marketing, sale, or development of LINTER software.

On February 2, 2005, RelexUS's thirteen shareholders resolved by a clear majority vote to amend the Assignment Agreement to five years in duration, renewable at the end of each five-year period.  Peshkov and Peshkova were the only dissenting votes.  Defendants claim that after Peshkov and Peshkova refused to respond to the Board of Directors' request for information regarding RelexUS' bank accounts, the RelexUS Board removed Peshkov as President and Peshkova as CFO, Treasurer and Secretary, terminating both for cause on March 7 and April 8, 2005, respectively.

On March 1, 2005, Plaintiffs brought suit in this Court asserting derivative claims on behalf of RelexUS and individual claims against Relex Russia and the individual Defendants.[1]  Plaintiffs also filed a Motion for Preliminary Injunction on March 2, 2005,

---

[1]Plaintiffs Amended Complaint, filed April 12, 2005, asserts the following ten claims for relief: (1) Claim One is a derivative claim on behalf of RelexUS against Relex Russia for breach of the Assignment Agreement; (2) Claim Two is a derivative claim on behalf of Relex US against Defendants Boychenko, Ermakov, Borisov, and Popov, Basis, SolovatSoft, and American Computer (collectively "all Defendants"), for intentional interference with the Assignment Agreement; (3) Claim Three is a derivative claim on behalf of Relex US against all Defendants for unfair competition and misappropriation of the Linter Softwar in violation of the Assignment Agreement; (4) Claim Four is a derivative claim on behalf of Relex US against Defendants Boyechenko, Ermakov, Borisov, and Popov (collectively the "individual Russian Defendants") for intentional interference with prospective business relationships of RelexUS, based upon the purported termination of the Assignment Agreement; (5) Claim Five is a claim on behalf of Plaintiff Peshkov against the individual Russian Defendants for intentional interference with the Peshkov Employment Agreement; (6) Claim Six is a derivative claim on behalf of Relex US against individual

and a Supplement to the Motion, on March 11, 2005.[2]  A preliminary injunction hearing is currently set for October 31, 2005.

**II.     Analysis**

(a)     Arbitration Clauses

The following agreements between the various parties in this action contain arbitration clauses which are potentially implicated by Plaintiffs' claims: (1) Assignment Agreement between Relex Russia and RelexUS, effective June 12, 2000, provides for arbitration in London, England (U.K.) by the London Court of International Arbitration ("LCIA"); (2) Employment Agreement between RelexUS and Plaintiff Peshkov, effective August 1, 2000 (the "2000 Employment Agreement"), provides for arbitration in Denver, Colorado by the American Arbitration Association ("AAA"); (3) Employment Agreement between RelexUS and Plaintiff Peshkov, effective July 30, 2003 (the "2003 Employment Agreement"), does not contain an arbitration provision;[3] (4) Employment Agreement between RelexUS and Plaintiff Peshkova, effective August 1, 2000 (the "Peshkova

---

Defendants Boychenko and Ermakov for breach of the Defendants' respective employment agreements; (7) Claim Seven is a derivative claim on behalf of Relex US against the individual Russian Defendants for breach of fiduciary duty and duty of loyalty; (8) Claim Eight is a claim on behalf of Plaintiffs Peshkov and Peshkova against the individual Russian Defendants for breach of fiduciary duty; (9) Claim Nine is a claim on behalf of Plaintiffs Peshkov and Peshkova against individual Russian Defendants for intentional interference with Plaintiffs' employment contracts; (10) Claim Ten is a claim on behalf of Plaintiffs Peshkov and Peshkova against the individual Russian Defendants for intentional interference with Plaintiffs' Share Purchase Contract.

[2]Plaintiffs' Motion and Supplement thereto request, in part, that (1) this Court rescind RelexUS's February 3, 2005 "Assignment Termination", (2) Defendants Relex Russia, Boychenko, Ermakov, Borisov, and Popov be enjoined from terminating the Assignment Agreement, (3) Defendants be enjoined from marketing, licensing, or selling LINTER software, and (4) Boychenko and Ermakov be enjoined from competing with RelexUS with regard to the LINTER software and disclosing trade secrets related to that software.

[3]The parties dispute whether Peshkov's 2003 Employment Agreement supercedes or merely modifies the 2000 Employment Agreement.

Employment Agreement"); (5) Employment Agreement between RelexUS and Defendant Boychenko, effective August 1, 2000 (the "Boychenko Employment Agreement"); and (6) Employment Agreement between RelexUS and Defendant Ermakov, effective April 10, 2003 (the "Ermakov Employment Agreement"). The arbitration clause within the Peshkova, Boychenko and Ermakov employment agreements provide for arbitration in Denver, Colorado by the AAA.

In their Motion to Compel, Defendants generally assert that the arbitration clauses contained in the Assignment Agreement and the various employment agreements are broad and therefore warrant arbitration of all Plaintiffs' claims. Pursuant to 9 U.S.C. §§ 3 and 4, Defendants request that this Court compel arbitration before the AAA in Denver, Colorado and stay the instant proceedings pending arbitration, or in the alternative, compel arbitration of all claims it finds subject to arbitration and stay the instant proceedings pending arbitration. Mot. to Compel, at 3.

Conversely, Plaintiffs argue that each arbitration clause at issue is narrowly drawn and, therefore, many of Plaintiffs' claims fall outside the scope of the arbitration clauses. Consequently, Plaintiffs aver certain claims are not subject to arbitration, other claims may be subject to arbitration but, if so, in London, England before the LCIA,[4] and certain other and different claims may be subject to arbitration in Denver, Colorado under the AAA. Pls.' Resp., at 2. Plaintiffs submit that rather than engage in "trifurcated" proceedings, justice, judicial economy and the law require this Court deny

---

[4] As discussed more fully in this Order, the Court finds claim one is the only claim subject to arbitration in London, England before the LCIA. Moreover, this point is not disputed by the parties, as Plaintiffs' counsel, Mr. Arkin, expressly agreed to this point during the August 10, 2005 hearing.

Defendants' Motion to Compel. *Id.* Plaintiffs also assert that because the California Defendants are neither signatories, nor third party beneficiaries to any arbitration agreement, none of the Plaintiffs' claims against California Defendants can be referred to arbitration.[5] *Id.*, at 4. In addition, Plaintiffs argue that regardless of this Court's resolution of the arbitration issue, this Court should enter Preliminary Injunction relief. *Id.*, at 3. I address the parties' arguments below.

    (b)    <u>Whether Plaintiffs' Claims are Within Purview of Arbitration Clauses</u>

I first examine the scope of each clause and then determine whether Plaintiffs' claims fall within its scope. *Cummings v. Fedex Ground Package System, Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) (*citing Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)). "'To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry.'" *Cummings,* 404 F.3d at 1261. First, "a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.* Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (emphasis in original).

---

[5] I find this argument is a non-issue because it only potentially impacts claims 2 and 3, which, as discussed later in this Order, are not arbitrable claims.

Applying this test to the arbitration clauses at issue, I first address Section VII, entitled "Dispute Resolution", of the Assignment Agreement, which provides:

> "In the event the parties cannot agree on any matters between them relating to the subject matter of this Agreement which they cannot resolve between themselves, the parties thereby agree to submit said dispute (including, but not limited to, issues of jurisdiction and arbitrability) to binding Arbitration before a single Arbitrator selected by them."
>
> Pls.' First Am. Compl., Exh. A, Section VII.

This clause controls what claims are subject to arbitration since "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Cummings,* 404 F.3d at 1262. Here, I find this clause is narrow in scope. It is not the type of broad provision which "refer[s] all disputes arising out of a contract to arbitration." *Id.* To the contrary, I find the parties manifested an intent to limit arbitration of disputes in this action by including the words "relating to the *subject matter* of [the Assignment Agreement]."[6] Pls.' First Am. Compl., Exh. A, Section VII (emphasis added).

Under a narrow arbitration clause, a dispute is subject to arbitration "only if it relates to an issue that is on its face within the purview of the clause," whereby collateral matters will generally not be arbitrable. *See Id.* Here, I find the Plaintiffs'

---

[6]The Eighth, Ninth, and Fourth Circuit cases relied upon by Defendants make similar findings, as each case refers to broad arbitration language that is distinguishable from the language in the Assignment Agreement. *See Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) ("arising out of or relating to this agreement or any breach of its terms . . ." language in arbitration agreement rendered clause broad); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-725 (9th Cir. 1999) (the phrase "all disputes arising in connection with the agreement" interpreted broadly); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93-95 (4th Cir. 1996) (consulting agreement which provides for "arbitration of any dispute of any kind whatsoever regarding the meaning, interpretation or enforcement" was broad enough to cover contract and tort claims).

second, third and fourth claims, which all sound in tort, are collateral to the "subject matter" of the Assignment Agreement and, therefore, are not covered by its arbitration clause. Accordingly, I find that Defendants' Motion to Compel should be denied to the extent it requests Plaintiffs be compelled to arbitrate claims two, three, and four under Section VII of the Assignment Agreement. However, since Plaintiffs' counsel indicated during the August 9, 2005 hearing and in their Response, that Plaintiffs' first claim for breach of the Assignment Agreement is within the scope of the narrow arbitration clause, I find such claim would be properly arbitrated in London before the LCIA.

Next, I address the arbitration clauses found within the Peshkov, Peshkova, Boychenko, and Ermakov Employment Agreements. As a preliminary matter, I find Peshkov's 2003 Employment Agreement merely modified his 2000 Employment Agreement and, therefore, the arbitration clause in the 2000 agreement is still in effect. Although the 2003 Employment Agreement contains the language, "[t]his Letter of Employment supersedes all previously signed employment agreements and employment contracts," I find the intent of the parties was to have the 2003 agreement supersede the earlier agreement only as to the specific changes made in the 2003 agreement. Specifically, I am persuaded by the fact that the 2003 agreement is only one-page in length, contains the words "Employment terms changes" in the "Re" section of the letter, and omits nearly all of the provisions of the 2000 agreement.

As for my analysis of the arbitration clauses within the Peshkov, Peshkova, Boychenko, and Ermakov Employment Agreements, which for purposes of this analysis contain essentially identical language, I find the arbitration language is broad.

Specifically, each clause contains the following language: "[e]xcept as herein provided, any and all disputes relating to or arising out of this agreement, including, but not limited to, the arbitrability and the validity of this Agreement shall be resolved by arbitration in Denver, Colorado by the AAA . . .".  As previously discussed, I find the "relating to or arising out of" language appearing in these clauses renders them broad.  *See Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997).

Having found the arbitration clause appearing in the employment agreements at issue to be broad, I turn to the issue of whether Plaintiffs' claims relate to the subject of the respective employment agreements, keeping in mind that where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of collateral matters.  *Cummings*, 404 F.3d at 1261.  Here, I find that Plaintiffs' sixth claim for breach of Defendants Boychenko and Ermakov's employment agreements is subject to arbitration in Denver, Colorado under the AAA because it clearly relates to these agreements.[7]

As for claims five and nine, which are brought on behalf of Peshkov and Peshkova against the individual Russian Defendants for interference with Plaintiffs' employment agreements, I find these claims are subject to arbitration.  As previously discussed, I find the tort claims alleged in claims five and nine are within the scope of the broad arbitration clauses contained in Peshkov's and Peshkova's respective employment agreements.  I further find that four individual Russian Defendants, Boyechenko, Ermakov, Borisov, and Popov, are parties to the Peshkov and Peshkova

---

[7]Plaintiffs agree to this point.  See Resp., at 8.

employment agreements by virtue of their status as officers and directors of RelexUS.[8] As such, by bringing claims against the individual Russian Defendants for interference with Plaintiffs' employment agreements, I find Plaintiffs are bound by the arbitration clauses contained therein.  Therefore, I find that claims five and nine are also subject to arbitration before the AAA in Denver, Colorado.

As for claim seven, which is brought on behalf of RelexUS and alleges breach of fiduciary duty and duty of loyalty against the individual Russian Defendants as officers, directors, and shareholders of RelexUS, I find this claim is subject to arbitration to the extent it is brought against Defendants Boychenko and Ermakov.  Again, I find the torts alleged in claim seven are covered by the broad arbitration clauses found in the Boychenko and Ermakov employment agreements.  However, I find claim seven, to the extent it alleges breach of fiduciary duty and duty of loyalty against Defendants Borisov and Popov, is not subject to arbitration because neither individual is a party to an employment agreement with RelexUS.[9]  I further find that claim eight, which differs from claim seven in that it is brought on behalf of Plaintiffs Peshkov and Peshkova, rather than RelexUS, is not subject to arbitration.  I agree with Plaintiffs' assertion that there is no agreement between the parties to this claim and, therefore, no relevant arbitration provision at issue.

---

[8]Although the record is not entirely clear on this point, Plaintiffs' provide, Boychenko is an officer and director of RelexUS, Ermakov "is or was an officer and director of Plaintiff RelexUS," Borisov "is a Director . . . of both Plaintiff RelexUS and Defendant Relex Russia", and Popov "is a Director" of RelexUS.  First Am. Compl., at 3.

[9]I find Defendants' assertion that arbitration is proper for claims against Borisov and Popov because they have consented to arbitration to be a legal nullity; the real issue is whether these defendants may properly compel arbitration because they are party to an agreement with Plaintiffs.

Lastly, I find that Plaintiffs' tenth claim for relief, alleging intentional interference on behalf of the individual Russian Defendants with Peshkov's and Peshkova's "Offer and Agreement to Sell and Purchase Shares of RelexUs, Inc." (the "Share Purchase Contract"), is not subject to arbitration. More particularly, I find the tenth claim does not directly implicate the Share Purchase Contract entered into by Brycen Co., Ltd. ("Brycen"), a Japanese business entity, and Plaintiffs Peshkov and Peshkova, because the individual Russian Defendants are not parties to this agreement. I also find, contrary to Defendants' assertion, the RelexUS General Stock Purchase Agreement, entered into by RelexUS and the Shareholders of Relex, Inc., does not apply because it is not directly related to claim ten's allegation that Defendants attempted to cause Brycen to breach the Share Purchase Contract. Accordingly, I find the tenth claim is not subject to arbitration.

    (c)    <u>Whether to Stay Proceedings</u>

Having found claims two, three, four, seven (to the extent claim seven alleges breach of fiduciary duty and duty of loyalty against Defendants Borisov, and Popov), eight, and ten are not subject to arbitration, claim one is subject to arbitration in London, England, pursuant to the LCIA, and claims five, six, seven (to the extent claim seven alleges breach of fiduciary duty and duty of loyalty against Defendants Boychenko and Ermakov), and nine are subject to arbitration in Denver, Colorado under the AAA, I must next address the propriety of compelling arbitration in these fora. The Tenth Circuit has held that where the parties agreed to arbitrate in a particular forum only a district court in that forum has the authority to compel arbitration under 9 U.S.C. § 4. *Ansari v.*

*Qwest Communications Corp.*, L 1625225, 3-4 (10th Cir. 2005) (internal citations omitted). "In other words, 'a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration.'" *Id.* Thus, contrary to Plaintiffs' assertion that justice, judicial economy, and the law requires this Court "adjudicate all of Plaintiffs' claims in this case in one forum, (i.e., this Court)", I find that this Court can only compel arbitration of the claims arbitrable before the AAA in Denver, Colorado. However, while I cannot order arbitration of claim one in London, England, before the LCIA, I can require the parties to inform me as to whether they agree to, and/or intend to arbitrate that claim in London, England.

Lastly, I address the remaining issue of whether this Court should proceed with the preliminary injunction hearing scheduled for October 31, 2005 or stay the trial under 9 U.S.C. § 3.[10] Plaintiffs assert this Court "<u>always</u> has authority to enter preliminary injunctive relief, especially such injunctive relief being in aid of arbitration and until an arbitrator is appointed . . .". *James Associates (USA) Ltd. v. Anhui Machinery & Equipment Import and Export Corp.*, 171 F.Supp.2d 1146, 1147 (D. Colo. 2001) (emphasis in original).[11] Upon my review of the Plaintiffs' argument and in light of 9 U.S.C. § 3, which provides that after a court determines an issue is referable to arbitration it shall "stay the trial of the action until such arbitration has been had in

---

[10] 9 U.S.C. § 3 states in pertinent part, "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . .".

[11] "[T]he majority of courts now hold that a grant of preliminary injunctive relief is not inconsistent with the [Federal Arbitration] Act, 'provided the court properly exercises its discretion in issuing the relief.'" *James Associates (USA) Ltd.*, 171 F.Supp.2d at 1147. The United States District Court further noted "[t]he injunction is in place 'pending a final hearing and determination pursuant to arbitration.'" *Id.*

accordance with the terms of the agreement . . .", I find, prior to the October 31, 2005 preliminary injunction hearing, the parties should submit supplemental briefing on the issue of how this Court can proceed under the law.

### III.  Conclusion

For the foregoing reasons, it is

ORDERED that Defendants Iosif Basis, Solovatsoft, Inc. and American Computer Systems, Inc.'s Motion to Compel Arbitration and Stay Proceedings, filed May 3, 2005, and Defendants Relex, Inc., Igor Boychenko, Michael Ermakov, Victor L. Borisov, and Ivan Popov's Joinder in Certain Defendants' Motion to Compel Arbitration and Stay Proceedings, filed May 20, 2005, which, for purposes of this Order the Court treats collectively as one motion to compel that was filed on behalf of all the Defendants to this action ("Defendants' Motion to Compel"), is **GRANTED in part and DENIED in part**. Defendants' Motion to Compel is **GRANTED** to the extent it requests Plaintiffs be compelled to arbitrate claims five, six, seven (to the extent claim seven alleges breach of fiduciary duty and duty of loyalty against Defendants Boychenko and Ermakov), and nine in Denver, Colorado under the AAA.  Defendants' Motion to Compel is **DENIED** to the extent it requests this Court compel Plaintiffs arbitrate claims one, two, three, four, seven (to the extent claim seven alleges breach of fiduciary duty and duty of loyalty against Defendants Borisov and Popov), eight, and ten.  It is

FURTHER ORDERED that claims five, six, seven (to the extent claim seven alleges breach of fiduciary duty and duty of loyalty against Defendants Boychenko and Ermakov), and nine be resolved by a single arbitrator in Denver, Colorado pursuant to

the AAA Rules.  It is

FURTHER ORDERED that on or before **Friday, September 30, 2005**, the parties submit supplemental briefing on the issue of whether this Court should stay the trial in accordance with 9 U.S.C. § 3, or proceed with the October 31, 2005 preliminary injunction hearing.  It is

FURTHER ORDERED that to the extent the parties agree Plaintiffs' first claim for relief is subject to arbitration in London, England before the LCIA and pursuant to the Assignment Agreement's arbitration clause, the parties shall inform the Court by **Friday, September 30, 2005**, whether they intend to arbitrate such claim in London, England.

Dated:  August 25, 2005

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge